**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
CHRISTINA CRUMP,              )
                             )
            Plaintiff,       )
                             )
     v.                      )      1:19CV466
                             )
ANDREW M. SAUL,              )
Commissioner of Social       )
Security,                    )
                             )
            Defendant.       )
```

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, Christina Crump, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; <u>see also</u> Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

<u>**I.  PROCEDURAL HISTORY**</u>

Plaintiff applied for DIB, alleging a disability onset date of December 19, 2013. (Tr. 202-03.) Upon denial of that application initially (Tr. 91-102, 120-23) and on reconsideration (Tr. 103-19, 129-33), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 135-36). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 45-75.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 30-44.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 3-7, 21, 192, 194, 195-97), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2018.
>
> . . .
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 19, 2013, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: CREST symptoms versus early systemic sclerosis and scoliosis.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [she] cannot perform work that requires her to climb ladders, ropes, or scaffolds or balance in order to perform work duties. [Plaintiff] can have no concentrated exposure to extreme cold or hazards such as heights or moving machinery.

2

[Plaintiff] can frequently, but not constantly, engage in bilateral manipulation. [Plaintiff] cannot push or pull with her upper extremity. [Plaintiff] cannot perform work that requires precise accuracy or intricate hand coordination.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 19, 2013, through the date of this decision.

(Tr. 35-44 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of
more than a mere scintilla of evidence but may be somewhat less
than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th
Cir. 2001) (internal brackets and quotation marks omitted). "If
there is evidence to justify a refusal to direct a verdict were the
case before a jury, then there is substantial evidence." Hunter,
993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Social Security Commissioner]." Mastro, 270 F.3d at
176 (internal brackets and quotation marks omitted). "Where
conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to properly analyze Listing 14.04A" (Docket Entry 12 at 4 (bold font omitted)); and

2) "[t]he ALJ erred in her assessment of the medical opinion of Plaintiff's treating specialist [Dr. Jill R. Zouzoulas]" (id. at 9 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-16.)

### 1. Listing 14.04A

In Plaintiff's first assignment of error, she maintains that "[t]he ALJ failed to properly analyze Listing 14.04A ['[s]ystemic sclerosis (scleroderma)']." (Docket Entry 12 at 4 (bold font omitted).) More specifically, Plaintiff asserts that, "[d]espite a well-documented history of a systemic sclerosis spectrum disease, the ALJ only noted the definitional requirements of Listing 14.04 and stated that they were not met[, but] . . . did not compare the criteria of Listing 14.04A to the medical findings in the record." (Id. (citing Tr. 37).) In that regard, Plaintiff argues that "[a]n ALJ's decision must include a discussion of which evidence the ALJ

---

at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

found credible and why with specific application of the relevant listing criteria to the record evidence." (Id. (citing Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989), and Bates v. Berryhill, 726 F. App'x 959, 960 (4th Cir. 2018)).) According to Plaintiff, "an ALJ mentioning medical signs which correspond to criteria of a listing in the medical summary [of the ALJ's decision], but failing to explain why the listing is not then met requires remand because the court 'will not divine a rationale' for the ALJ's listing conclusion." (Id. at 5 (quoting Bates, 726 F. App'x at 960).)

Plaintiff further points to various medical findings and opinions in the record (see id. at 6-8 (citing Tr. 297-98, 323, 324, 354, 358-59, 394, 397, 403, 404, 419, 421, 423, 431-32, 433, 445, 447-48, 481, 482, 500, 501, 507, 540, 554, 556, 558, 589, 593, 595, 596-97, 600, 601, 603-04, 606, 607, 618, 621, 623, 624, 636, 639, 643, 650)) that she contends constitute "significant evidence that [her] scleroderma meets or medically equals the criteria of Listing 14.04A" (id. at 8). Plaintiff thus asserts that "the ALJ's error is 'more than a technical error, and is instead a situation where the ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a meaningful review.'" (Id. (quoting Dial v. Colvin, No. 1:16CV70, 2016 WL 6997502, at *6 (M.D.N.C. Nov. 30, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2016) (Eagles, J.)).)

9

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify."). "[A]n ALJ . . . must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination where the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a disability listing." Ollice v. Colvin, No. 1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016)

10

(unpublished) (Peake, M.J.) (emphasis added) (quoting Radford, 734 F.3d at 295), recommendation adopted, slip op. (M.D.N.C. Jan. 10, 2017) (Osteen, Jr., J.).

In order to meet the requirements of Listing 14.04A, a claimant must first establish "[s]ystemic sclerosis (scleroderma)," which the regulations define as "a spectrum of disease in which thickening of the skin is the clinical hallmark." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00D3a. The regulations further explain that "Raynaud's phenomenon, often medically severe and progressive, is present frequently," and that "CREST syndrome (calcinosis, Raynaud's phenomenon, esophageal dysmotility, sclerodactyly, and telangiectasia) is a variant that may slowly progress over years." Id. In addition, a claimant must demonstrate "[i]nvolvement of two or more organs/body systems, with:

> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)."

Id., § 14.04A (emphasis added).

Here, the ALJ specifically considered Listing 14.04A, but found that "treatment records lack evidence that one of [Plaintiff]'s organs/body systems is involved to at least a moderate level of severity with [] at least two of the

constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss[)].” (Tr. 37.) Notably, the ALJ did not appear to dispute that Plaintiff had established both a diagnosis of “[s]ystemic sclerosis (scleroderma)” and “[i]nvolvement of two or more organs/body systems.” (Id.) Thus, the issue narrows to whether the ALJ identified substantial evidence to support her conclusion that Plaintiff failed to show one organ/body system involved to at least a moderate level of severity with at least two of the constitutional symptoms or signs. Reading the ALJ’s decision as a whole, the Court should conclude that the ALJ supported her conclusion regarding Listing 14.04A with substantial evidence.[5]

---

[5] As noted above, Plaintiff correctly observes that the ALJ did not expressly compare the criteria of Listing 14.04A to the record evidence in her step three analysis. (See Docket Entry 12 at 4-5 (citing Tr. 37).) However, the Court “must read the ALJ’s decision as a whole,” because “an ALJ’s step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ’s findings at subsequent steps in the analysis.” Keene v. Berryhill, 732 F. App’x 174, 177 (4th Cir. 2018) (citing Fischer-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005) (deeming “remand for a more thorough discussion of the listings [not required] when confirmed or unchallenged findings made elsewhere in the ALJ’s decision confirm the step three determination under review”)). The decisions on which Plaintiff relies to challenge consideration of the ALJ’s decision as a whole do not aid her cause, as they involve situations where the ALJ did not consider the listing in question at all, and even consideration of the ALJ’s entire decision did not supply substantial evidence for the step three finding at issue. See Bates, 726 F. App’x at 960 (“[T]he ALJ failed to mention Listing 14.07A, . . . [and] summarily found that [the plaintiff’s] impairments do not meet the criteria of any listed impairments, a boilerplate statement. . . . The [Commissioner ] suggests that the ALJ’s consideration of [the plaintiff’s chronic variable immune deficiency] and recurrent infections at other steps of the sequential process cures any Step Three error. However, we conclude that, reading the ALJ’s decision as a whole, the ALJ failed to make findings pertinent to Listing 14.07A, and we will not divine a rationale for any implicit conclusion that [the plaintiff’s] medical conditions do not meet or equal Listing 14.07A.” (emphasis added and internal quotation marks and ellipses omitted)); Dial, 2016 WL 6997502, at *5 (“[T]he ALJ’s decision does not mention or address Listing 4.04 or the underlying

12

The ALJ's decision adequately supports her conclusion that Plaintiff's "treatment records lack evidence that one of [Plaintiff]'s organs/body systems is involved to at least a <u>moderate</u> level of severity with [] at least two of the constitutional symptoms or signs" (Tr. 37 (emphasis added)), because it includes the following, pertinent findings:

- Plaintiff "underwent extensive medical work-up consisting of a variety of medical tests in the first half of 2014," but "treatment records found no significant abnormalities beyond some edema and [Plaintiff]'s <u>subjective</u> pain complaints" (Tr. 39 (emphasis added) (citing Tr. 339-91));

- Plaintiff "consult[ed] a neurologist" in the fall of 2014 "who administered a nerve study which found no abnormalities in [Plaintiff]'s upper or lower extremities," and "[o]ther medical testing from this period ultimately indicated that [Plaintiff] had no significant abnormalities, although physical examination . . . did reveal 'extensive tightness' in her skin and sclerema along with some edema (<u>id.</u> (citing Tr. 324, 331-91));

- "[t]reatment records from 2015 indicate little change in [Plaintiff]'s relatively normal findings," Plaintiff "continued to undergo a variety of medical tests, but each returned relatively normal findings outside evidence of carpal tunnel syndrome, general pain symptoms, and hand swelling" and Plaintiff "was found to have normal gait, full range of motion, and normal strength in muscle groups" (<u>id.</u> (citing Tr. 472-580));

- "treatment records from 2016 note that the majority of [Plaintiff]'s complaints and symptoms were successfully treated with a low dose of prednisone" (<u>id.</u> (citing Tr. 638)); and

requirements for that Listing <u>at all</u>." (emphasis added)).

13

- Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (id.)

Moreover, the ALJ's finding that, notwithstanding Plaintiff's scleroderma symptoms, she remained able to perform work at the light level of exertion involving, inter alia, frequent bilateral manipulation but no pushing/pulling or intricate hand coordination (Tr. 38) further buttresses the ALJ's conclusion respecting Listing 14.04A. See Fischer-Ross v. Barnhart, 431 F.3d 729, 734-35 (10th Cir. 2005) ("Mindful that the purpose of the listings is to identify impairments 'severe enough to prevent a person from doing any gainful activity,' 20 C.F.R. § 404.1525(a), the ALJ's [RFC] findings regarding the functionality of [the c]laimant's upper extremities allow [the c]laimant to perform a wide range of gainful activities[ and] . . . do not approach the level of severity required to render [the c]laimant presumptively disabled under [a listing]."). Under the circumstances, the ALJ's decision as a whole supports the ALJ's conclusion that Plaintiff's scleroderma did not meet or equal the criteria of Listing 14.04A.

Plaintiff nevertheless argues that "[t]he involvement of [her] skin is *at least* at the moderate level of severity" (Docket Entry 12 at 7 (emphasis in original)), noting that "[t]he tightening of her skin is associated with numbness, tingling, swelling, and decreased strength in her upper extremities since her alleged onset

14

date in December, 2013" (id. (citing Tr. 323, 324, 354, 358-59, 394, 403, 419, 421, 423, 431-32, 433, 447-48, 481, 589, 596-97, 603-04, 636, 643)).  However, many of the transcript pages cited above reflect only Plaintiff's subjective complaints of symptoms (see, e.g., Tr. 354, 394, 421, 589, 596-97, 603-04), which do not constitute objective medical evidence sufficient to meet or equal the criteria of a listing, see 20 C.F.R. § 404.1529(d)(3) ("[The SSA] will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [a claimant's] impairment(s) to that of a listed impairment.").  Moreover, many of the findings on which Plaintiff relies rate as only mild or lack any description of their severity (see, e.g., Tr. 359 ("1+ pitting edema"), 403 ("mildly small welts," "a few telangiectasias," and "sclerodactyly"), 419, 423, 431-32, & 447-48 ("mild hyperreflexia" and 4+/5 strength), 481 (4+/5 strength "at interosseous" and "[d]ecreased pinprick"), 636 ("decreased hand flexion")), which bolsters the ALJ's finding that none of Plaintiff's body systems evidenced involvement to a moderate level of severity.

Concerning subparagraph 2 of Listing 14.04A, Plaintiff maintains that she "experienced the constitutional signs of malaise, severe fatigue and fever."  (Docket Entry 12 at 7 (citing Tr. 403, 421, 433, 445, 554, 589, 604, 618, 624, 650).)  However, those treatment records largely depict Plaintiff's subjective

15

complaints of fatigue and bodily discomfort (see, e.g., Tr. 403, 421, 433, 445, 554, 589, 604, 618, 624), while reflecting objective observations that Plaintiff remained well-appearing, in no distress, alert and oriented, with normal cognition, concentration, and attention and little to no tenderness on examination (see, e.g., Tr. 403, 423, 447, 592-93, 606, 621, 626). With regard to fever, as the Commissioner argues, "while Plaintiff did complain to [Dr. Zouzoulas] that [Plaintiff] had a 'low-grade fever' [at some point during the prior week] (Tr. 624), the only objectively recorded instances of fever in the record are linked directly to infections, such as an upper respiratory infection or a urinary tract infection, not to her CREST syndrome versus systemic sclerosis (see, e.g., Tr. 541, 550, 556, 558)." (Docket Entry 14 at 11.) Thus, Plaintiff's cited findings fall far short of establishing listing-level constitutional signs and symptoms.[6]

In sum, Plaintiff's first assignment of error fails as a matter of law.

---

[6] Notably the regulations define "severe" in this context as "medical severity as used by the medical community," and note that "[t]he term does not have the same meaning as it does . . . in connection with a finding at the second step of the [SEP]." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00C12 (emphasis added). Further, "fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function," and "[m]alaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." Id., § 14.00C2 (italics omitted, underscoring added).

## 2. Opinions of Dr. Zouzoulas

In Plaintiff's second and final issue on review, she faults the ALJ for improperly assessing the medical opinions of Plaintiff's treating rheumatologist, Dr. Zouzoulas. (See Docket Entry 12 at 9-12.) In particular, Plaintiff contends that "[t]he ALJ failed to provide a good reason for giving little weight to Dr. Zouzoulas' treating medical opinion[s]" (id. at 12), and deems that error harmful, because Dr. Zouzoulas opined that Plaintiff's symptoms would cause her to miss more than four days of work per month (see Tr. 636), which the VE testified would preclude competitive employment (see Tr. 73-74).

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover,

17

as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).[7]

On August 16, 2015, Dr. Zouzoulas completed a preprinted form on which she diagnosed Plaintiff with "evolving probable scleroderma" that resulted in "[m]oderate" pain, "sclerodactyly," and "decreased hand flexion." (Tr. 636.) Dr. Zouzoulas further opined that, "[d]ue to [Plaintiff]'s hand heavy job [as a phlebotomist,] her hand limitations keep her from working at all," and predicted that Plaintiff's impairments would cause her to miss work "[m]ore than four days per month." (Id.) Less than a year later, on July 1, 2016, Dr. Zouzoulas prepared a "To Whom It May Concern" letter which stated, in pertinent part, as follows:

> [Plaintiff] is a 43-year old female under my care for emerging connective tissue disease. Note [Plaintiff] was

---

[7] For claims filed on or after March 27, 2017, the Commissioner has significantly amended the regulations governing opinion evidence. The new regulations provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. As Plaintiff filed her claim prior to March 27, 2017 (see Tr. 202-03), this Recommendation has analyzed Plaintiff's claim pursuant to the treating physician rule set out above.

originally seen as a consultation in 12/2014 due to complex workup including specialty referrals and testing. It appears [Plaintiff]'s diagnosis falls in the scleroderma family. Note that her symptoms include sclerodactyly, palmar thickening, Raynaud's, esophageal motility issues, mildly decreased [diffusing capacity of lung for carbon monoxide ('DLCO')] on [pulmonary function tests ('PFTs')], fatigue, and arthralgia's [sic]. [Plaintiff] has had an intermittently low positive [anti-nuclear antibody test ('ANA')]. While she currently meets criteria for undifferentiated connective tissue disease, all of her testing and symptomatology point towards evolution of systemic versus limited scleroderma. Her presentation to date most closely approximates systemic limited scleroderma, "CREST".

Note that prior to this diagnosis [Plaintiff] was very healthy and working as a phlebotomy tech. She has had significant decrease in the dexterity of her hands due to the swelling, thickening, tightness, and arthralgia's [sic] therein. She is significantly fatigued. These limitations have caused her to be out of work. Unfortunately, I do not see this presentation as being reversible in the foreseeable future. Scleroderma is a lifetime, incurable, and difficult to treat or even improve diagnosis.

(Tr. 643.)

The ALJ evaluated and weighed Dr. Zouzoulas's opinions as follows:

Little weight is given to the medical opinion of [Dr.] Zouzoulas[ ]. Dr. Zouzoulas stated that [Plaintiff] had medically determinable impairments diagnosed by objective signs and/or lab finding [sic], but then went on to state that [Plaintiff] had "probable" [sic] and could provide no objective medical evidence to support the other impairments listed. Dr. Zouzoulas also stated that [Plaintiff] would miss more than four days a month, but offered no clinical findings or objective evidence to support her opinions. Dr. Zouzoulas then later states that [Plaintiff's] presentation "approximates" CREST, but the [ALJ] notes that this is not a clear diagnosis, consistent with later medical record [sic] from 2017 that indicate that a clear diagnosis regarding [Plaintiff]'s

19

> symptoms is still elusive. The [ALJ] notes that, after
> reviewing the entire record, there is no reasonable
> foundation for the majority of medical opinions given by
> Dr. Zou[z]oulas that can be found in objective evidence,
> as records routinely note clinical findings within normal
> limits. Thus, as there is little to no medical basis to
> support the medical opinions of this medical source,
> little weight is given to her medical opinions.

(Tr. 41 (internal citation omitted).) Plaintiff takes issue with all of the ALJ's bases for discounting Dr. Zouzoulas's opinions. (See Docket Entry 12 at 9-11.)

First, Plaintiff disagrees with the ALJ's finding that "Dr. Zouzoulas did not provide objective medical evidence to support the impairments listed [on the August 2015 form]." (Id. at 9 (citing Tr. 41).) In that regard, Plaintiff argues that "objective medical evidence such as MRIs and X-rays are not required for a diagnosis of a condition on the systemic sclerosis spectrum[, as] recognized by the preamble to [Listing 14.04A] which states that 'documentation involves differentiating the clinical features of systemic sclerosis from other autoimmune disorders'" and "'there may be an overlap.'" (Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00D3d).) According to Plaintiff, "[t]his differentiation occurs throughout the record, as [Plaintiff] undergoes testing for Multiple Sclerosis, including an MRI and a diagnostic spinal puncture, and undergoes consultations with dermatologists and neurologists." (Id. at 9-10 (internal citations omitted) (citing Tr. 336, 394, 400-01, 415, 639).) Plaintiff

20

further notes that "thickening of the skin is the 'clinical hallmark' of the disorders on the systemic sclerosis spectrum (id. at 10 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00D3a)), and that such thickening "is noted throughout the record" (id.).

To the extent the ALJ erred by finding that Dr. Zouzoulas "could provide no objective medical evidence to support the other impairments listed" (Tr. 41), in connection with the August 2015 form, because Dr. Zouzoulas cited "sclerodactyly" (localized thickening and tightness of the skin of the fingers and/or toes) and "decreased hand flexion" as the "objective medical evidence" of "evolving probable scleroderma" (and not "other impairments") (Tr. 636), that error by the ALJ remains harmless under the circumstances presented here, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). As an initial matter, Plaintiff's argument on this front glosses over the fact that, read in context, the ALJ primarily discounted Dr. Zouzoulas's findings on the August 2015 form because they involved an equivocal (i.e. "probable") diagnosis. (See Tr. 41.) Additionally, the ALJ faulted Dr. Zouzoulas for "stat[ing] that [Plaintiff] would miss more than four days a month, but offer[ing] no clinical findings or objective evidence to support her opinions." (Id.) As the ALJ

21

correctly observed, Dr. Zouzoulas did not provide <u>any</u> support for her opinion that Plaintiff's ("evolving probable") scleroderma would cause her to miss more than four days of work per month (<u>see</u> Tr. 636), i.e., the opinion Plaintiff deemed <u>case-dispositive</u> (<u>see</u> Docket Entry 12 at 11-12).[9]

According to Plaintiff, Dr. Zouzoulas opined that "the <u>combination of pain and fatigue</u> would cause [Plaintiff] to miss 4 or more days of work per month." (Docket Entry 12 at 11-12 (emphasis added) (citing Tr. 636).) That argument fails for two reasons. First, the August 2015 form does not mention "fatigue" <u>at all</u>, rates Plaintiff's pain as only "[m]oderate" (i.e., less than "[m]oderately-[s]evere" or "[s]evere"), and does not link Plaintiff's moderate pain in any fashion to four or more work absences per month. (Tr. 636.) Second, the ALJ noted that Plaintiff "underwent extensive medical work-up consisting of a variety of medical tests," as well as that "treatment records found no significant abnormalities beyond some edema and [Plaintiff]'s <u>subjective</u> pain complaints," and found Plaintiff's subjective complaints of pain and other symptoms "not entirely consistent with

_____

[9] Given Dr. Zouzoulas's comment immediately below her absence opinion that, "[d]ue to [Plaintiff]'s hand heavy job [as a phlebotomist,] her hand limitations keep her from working <u>at all</u>," Dr. Zouzoulas likely intended to convey that Plaintiff's sclerodactyly and/or decreased hand flexion would cause her to miss more than four days of work <u>as a phlebotomist</u> per month, because those symptoms prevented her from performing that work "<u>at all</u>." (Tr. 636 (emphasis added).) In accordance with that opinion, the ALJ found at step four that Plaintiff did not retain the RFC to perform her past relevant work as a phlebotomist. (<u>See</u> Tr. 42.)

22

the medical evidence and other evidence in the record" (Tr. 39 (emphasis added)), a finding Plaintiff did not challenge (see Docket Entry 12). Accordingly, the ALJ did not err in finding that Dr. Zouzoulas failed to provide any basis for her opinion that Plaintiff's scleroderma would cause more than four work absences each month. (See Tr. 41, 636.)

Next, Plaintiff challenges the ALJ's criticism of Dr. Zouzoulas's diagnoses as "probable," "approximating CREST," and "elusive," arguing that such "parsing" of terminology "is insignificant in evaluating Dr. Zouzoulas['s] opinion." (Docket Entry 12 at 10.) According to Plaintiff, Dr. Zouzoulas noted that "scleroderma is difficult to treat and diagnose" (id. (citing Tr. 643)), and "there is little doubt that [Plaintiff]'s condition was certainly on the systemic sclerosis spectrum," as "Dr. Zouzoulas definitively states that [Plaintiff]'s condition is in the scleroderma family" (id. (citing Tr. 643)). Plaintiff further contends that the ALJ's point "is also moot because on October 2, 2017, Dr. Zouzoulas appears to have definitively diagnosed 'SCLERODERMA (CREST versus systemic sclerosis).'" (Id. (citing Tr. 650).)

In fact, the ALJ correctly observed that, when Dr. Zouzoulas offered her opinions in 2015 and 2016, she had not reached a definitive diagnosis of Plaintiff's condition. (See Tr. 41.) Moreover, although Plaintiff asserts that Dr. Zouzoulas

23

"definitively state[d in the July 2016 letter] that [Plaintiff]'s condition [wa]s in the scleroderma family" (Docket Entry 12 at 10 (emphasis added) (citing Tr. 643)), Dr. Zouzoulas's actual statement then remained more equivocal: "It appears [Plaintiff]'s diagnosis falls in the scleroderma family." (Tr. 643 (emphasis added).) The lack of a definitive diagnosis at the time a treating source offers an opinion constitutes an appropriate ground on which to discount that opinion. See McCrimmon v. Astrue, No. CIV.A. 5:11-1718, 2012 WL 2502690, at *11 (D.S.C. May 21, 2012) (unpublished) (finding ALJ did not err by discounting treating physician's opinion that narcolepsy disabled the claimant, because physician's notes described test results as "suggestive of" and "consistent with" narcolepsy and physician stated that the claimant "possibly" had narcolepsy), recommendation adopted, 2012 WL 2500947 (D.S.C. June 27, 2012) (unpublished).

Lastly, Plaintiff maintains that "there is evidence forming a 'reasonable foundation' for Dr. Zouzoulas['s] opinions, in that she "routinely notes sclerodactyly, palmar thickening, Raynaud's, and fatigue." (Docket Entry 12 at 10 (citing Tr. 403, 500, 507, 589-95, 596-601, 603-07, 618-21, 650).) Plaintiff further points out that "other doctors routinely noted decreased strength in [Plaintiff]'s hands, decreased sensation and swelling" (id. at 10-11 (citing Tr. 323, 354, 359, 394, 419, 423, 426-27, 431-32, 433, 435, 481-82)), which "findings are certainly not 'within normal

24

limits'" (id. at 11 (quoting Tr. 41)). Plaintiff's argument ignores the fact that – although, as discussed above, some foundation existed for Dr. Zouzoulas's statement in August 2015 that Plaintiff suffered from "probable evolving scleroderma" (Tr. 636) and/or Dr. Zouzoulas's July 2016 opinion that Plaintiff's "presentation to date most closely approximate[d] systemic limited scleroderma, 'CREST'" (Tr. 643), no such foundation existed for Dr. Zouzoulas's opinion that Plaintiff's condition would cause her to miss more than four days of work per month (even assuming Dr. Zouzoulas meant to opine that Plaintiff would miss four days per month of any type of work, not just her work in the phlebotomy field). Put simply, the ALJ correctly observed that Dr. Zouzoulas "offered no clinical findings or objective evidence" (Tr. 41 (emphasis added)) to support her opinion that sclerodactyly and/or decreased hand flexion would cause Plaintiff to miss four days of any work per month. (See Tr. 636.)

For these reasons, Plaintiff's assignment of error with respect to the ALJ's evaluation of Dr. Zouzoulas's opinions falls short.

## III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that

25

Defendant's Motion for Judgment on the Pleadings (Docket Entry 13)

be granted, and that judgment be entered dismissing this action.

                                        /s/ L. Patrick Auld
                                 **L. Patrick Auld**
                        **United States Magistrate Judge**

October 16, 2020